UNITED STATES of America, Appellee,

v.

Manoel Rodriguez DA SILVA,
Defendant-Appellant.

No. 240, Docket 83–1147.

United States Court of Appeals,
Second Circuit.

Argued Sept. 26, 1983.
Decided Dec. 19, 1983.

Ephraim Savitt, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Allyne R. Ross, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Ronald G. Russo, New York City (Edward M. Chikofsky, Russo, Silverman & Vitaliano, New York City), for defendant-appellant.

Before MANSFIELD, KEARSE and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Manoel Rodriguez Da Silva appeals from a judgment entered in the United States District Court for the Eastern District of New York, after a jury trial before Henry Bramwell, *Judge,* convicting him of unlawful importation of narcotics in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) (1976), and of unlawful possession of narcotics with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1976). Da Silva was sentenced to two concurrent terms of ten years' imprisonment to be followed by a fifteen-year special parole term, and a cumulative fine of $20,000. On appeal Da Silva contends principally that the court erred in not treating testimony as to a United States Customs Service official's translation of statements by Da Silva to agents of the United States Drug Enforcement Administration ("DEA") as hearsay inadmissible under Fed.R.Evid. 801 *et seq.* Finding no merit in this contention or in any of Da Silva's other claims of error, we affirm.

## BACKGROUND

On January 17, 1983, Da Silva arrived at John F. Kennedy International Airport on a flight from Rio de Janeiro, Brazil. Da Silva was traveling on a Brazilian passport, and apparently his native language is Portuguese. During routine questioning by a customs inspector, which was conducted entirely in English, Da Silva stated that he had come to New York on business and intended to stay for a week to ten days. In response to further questioning, Da Silva stated that he did not know the person with whom he was to do business, that he had no business card or other document identifying his business, and that he would have to find his business contacts by looking in the yellow pages.

When the customs inspector turned his attention to Da Silva's luggage, he discovered packages of white powder concealed in a false-bottomed coffee carton, in a box of American tissues, and in cartons of American cigarettes. Tests revealed that the powder was cocaine ranging between 95.8 and 98.8 percent in purity. In the midst of these discoveries Da Silva asked the customs inspector, still in English, "Is it all right if I go now?" Not surprisingly, he was denied permission to leave.

Da Silva was taken to a secondary examination room and DEA special agents were summoned to question him. Customs Inspectional Aide Mario Stewart, a certified Spanish interpreter who had been raised in Panama, went to the examination room to interpret during the DEA interview of Da Silva.

When Stewart entered the examination room, Da Silva, speaking in Spanish, asked whether Stewart spoke Spanish. Stewart replied affirmatively, and Da Silva said, again in Spanish, "Thank God." Stewart read Da Silva his *Miranda* rights from a Spanish language card, and Da Silva indicated in Spanish that he understood his rights.

DEA Special Agent Raymond Tripicchio thereafter interrogated Da Silva, with Stewart translating the questions into Spanish and Da Silva responding in Spanish. According to Stewart's translations of Da Silva's answers, Da Silva claimed that

he had come to the United States for a vacation, that he did not know cocaine was concealed in his luggage, and that a "Mr. Pedro" had packed the luggage containing the contraband as a gift for Mr. Pedro's American friends. Da Silva indicated that Mr. Pedro had paid for Da Silva's ticket in cash and had given him two to three thousand dollars for delivering the "gifts."[1] Da Silva also described a prior transaction involving Mr. Pedro, in which he had successfully delivered similar gifts of coffee and tobacco to Mr. Pedro's associates in Atlantic City. Da Silva refused to identify the associates.

Da Silva later repeated this story to DEA Group Supervisor Frank Cruz. Cruz is fluent in Spanish and interrogated Da Silva in that language without the need for an interpreter. Da Silva again indicated that Pedro had paid him two to three thousand dollars to deliver gifts to New York City, and again discussed the Atlantic City episode.

Da Silva was indicted on one count of unlawful importation of narcotics with intent to distribute, in violation of 21 U.S.C. §§ 952(a) and 960(a)(1), and one count of unlawful possession of narcotics with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Prior to trial, Da Silva moved to suppress the statements he had made to the customs inspector and the DEA agents. His motion was denied and he has not challenged this ruling on appeal. At trial, the government's evidence included the testimony of DEA agents Tripicchio and Cruz as to Da Silva's statements described above. The jury convicted Da Silva on both counts.

## DISCUSSION

██ On this appeal Da Silva raises several claims of error. Principally he contends that Tripicchio's testimony as to Stewart's translation should have been excluded because the testimony was hearsay or because the translation was too inaccurate to be trustworthy. In addition, Da Silva contends that he is entitled to a new trial because the court did not ensure that he received adequate translational assistance at trial and because it failed to exclude certain challenged items of evidence. We find no merit in any of these arguments. Only the contentions as to Tripicchio's testimony warrant extended discussion.[2]

### A. The Accuracy of the Translation

██ Da Silva argues that Stewart translated incorrectly and that Da Silva's inability to communicate in Spanish undermines

---

1. Da Silva suggests that he referred to two to three thousand Brazilian cruzeiros rather than dollars. The implication is that since 2000 cruzeiros would be the equivalent of only $6, the amount of the gratuity was not so high as to arouse his suspicions. However, there is no testimony in the record to support Da Silva's suggestion, and when he was arrested, he was carrying $1,112 in dollars.

2. Da Silva's contention that he was denied adequate translational assistance at trial is meritless. He had a court-appointed interpreter for the first day of trial; he had the services of interpreters retained by himself thereafter. He complained to the court only of the first day's interpreter, and his complaint was that the proceedings appeared to be repetitive in that the judge seemed to be "ask[ing] the same questions over and over again." Since those proceedings related to jury selection, which are by nature repetitive, there appears to have been no serious lack of understanding on Da Silva's part. Indeed, his counsel agreed with Judge Bramwell, after the judge inquired into Da Sil-

va's confusion, that the court-appointed interpreter's translations had appeared to be fair. Da Silva never again complained at trial about the translational services given him. The record establishes that the trial court conducted adequate inquiry into Da Silva's complaints and there was no abuse of discretion in its determination that adequate interpretation was being provided.

We find no greater merit in Da Silva's contention that the trial court erred in receiving in evidence his customs declaration because the government failed to prove a chain of custody after the document was seized from him. No such proof was necessary as the declaration was identified by Tripicchio as the one that had been taken from Da Silva.

Finally, Da Silva's contention that evidence of his statements as to the Atlantic City transactions should have been excluded as prior crimes evidence borders on the frivolous. Da Silva denied knowing that he was carrying cocaine. Evidence of the similar transactions was admissible to show his knowledge. Fed.R. Evid. 404(b).

the accuracy of any translation from the Spanish. The evidence contradicts both premises.

The district court found that Da Silva was able to communicate effectively in Spanish, a finding we may disregard only on a showing of clear error. *See, e.g., United States v. Mangan,* 575 F.2d 32, 48 (2d Cir.) (factual finding of nongovernmental search), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978); *United States v. Wiener,* 534 F.2d 15, 17 (2d Cir.) (factual finding of consent to search), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976). The trial court's finding has ample support in the evidence. Not only did both Stewart and Cruz testify to Da Silva's understanding of Spanish, after having conducted effective dialogues with him, but Da Silva himself initiated his conversation with Stewart by inquiring whether or not Stewart spoke Spanish; he expressed no interest in Stewart's ability to speak Portuguese. And when Stewart said he spoke Spanish, Da Silva said "Thank God" in Spanish—not in Portuguese. Given the testimony by witnesses skilled in Spanish who had conversed with Da Silva, and given Da Silva's clear satisfaction at the time of the interviews to have them conducted in Spanish, the trial judge was entirely justified in finding that Da Silva's mastery of Spanish was sufficient. Evidence introduced by Da Silva that a person fluent only in Portuguese would have difficulty understanding conversation in Spanish is hardly material, since the evidence established that Da Silva spoke and understood both Portuguese and Spanish.

The evidence also strongly supports the accuracy of Stewart's translation in the present case. Stewart grew up in Panama and has native fluency in the Spanish language. Da Silva would likely have expressed confusion or distress if Stewart's Spanish had deviated materially from the patterns with which Da Silva was familiar. There is no indication whatever that he did so. Further, the only concrete error adduced by Da Silva is Stewart's mistranslation of the word for "businessman" as "handyman." There is no suggestion that this error, or any other like it, could have resulted in a misunderstanding of the basic exculpatory explanation Da Silva offered for his possession of cocaine. Finally, the testimony of Agent Cruz confirmed the substantial accuracy of Stewart's translation. Cruz had interrogated Da Silva without an interpreter and his testimony as to Da Silva's answers was the same as Tripicchio's testimony as to Stewart's translation of those answers.

### B. *The Hearsay Question*

The hearsay question is more complex. If Tripicchio had spoken with Da Silva directly and could himself have testified to Da Silva's answers, his testimony as to Da Silva's statements would have been non-hearsay admissions under Fed.R.Evid. 801(d)(2)(A) ("A statement is not hearsay if ... [t]he statement is offered against a party and is (A) his own statement ...."). The specter of hearsay arises because Tripicchio could testify only to what Stewart said Da Silva had said. Although case authority dealing with such a situation is sparse, the prevailing view is that the translator is normally to be viewed as an agent of the defendant; hence the translation is attributable to the defendant as his own admission and is properly characterizable as non-hearsay under Rule 801(d)(2)(C) or (D), which provides:

> A statement is not hearsay if—
>
> . . . .
>
> (2) The statement is offered against a party and is ... (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship ....

Thus, 4 J. Weinstein & M. Berger, *Evidence* ¶ 801(d)(2)(C)[01], at 801–158 n. 34 (1981), states that

> [p]rovided the interpreter has a sufficient capacity, and there is no motive to misrepresent, the interpreter is treated as the agent of the party and the statement is

admitted as an admission unless circumstances are present which would negate the presumption of agency.

*See also* 6 J. Wigmore, *Evidence* § 1810(2), at 376 (Chadbourn rev. ed. 1976).

Circumstances tending to negate an inference of agency would include the existence of a substantial possibility that the interpreter sought to shift suspicion to the accused and away from himself, *see Kalos v. United States*, 9 F.2d 268, 271 (8th Cir. 1925) (excluding third party's account of translator's interpretation where translator had motive to fabricate), or demonstrated incompetence on the part of the translator, *see United States v. Santana*, 503 F.2d 710, 717 (2d Cir.) (accurate translation by coconspirator held not hearsay), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974). Where, however, there is no motive to mislead and no reason to believe the translation is inaccurate, the agency relationship may properly be found to exist. In those circumstances the translator is no more than a "language conduit," *United States v. Ushakow*, 474 F.2d 1244, 1245 (9th Cir.1973), and a testimonial identity between declarant and translator brings the declarant's admissions within Rule 801(d)(2)(C) or (D).[3]

■ On the record before us we have no difficulty in concluding that Da Silva authorized Stewart to speak for him in his interview with Tripicchio. The fact that Stewart was an employee of the government did not prevent him from acting as Da Silva's agent for the purpose of translating and communicating Da Silva's statements to Tripicchio. *See* Restatement (Second) of Agency § 392 (1958) (dual agency permitted). Da Silva was plainly much relieved to have a translator, and, after receiving *Miranda* warnings from Stewart, spoke freely with Tripicchio through Stewart. Da Silva could not, in the circumstances, fail to understand Stewart's role as an employee of the government. Da Silva's

conscious reliance on Stewart's translation amounted to "authorization" for purposes of the hearsay rule. Since, as discussed in Part A above, the substance of Stewart's translation, which was independently confirmed, was apparently accurate, Da Silva's hearsay objection was properly overruled.

The judgment of conviction is affirmed.

---

**3.** In *Ushakow* (as in *United States v. Santana, supra*), there was an alternative basis for admissibility since the translator was also a coconspirator of defendant. *See* Rule 801(d)(2)(E); *United States v. Barnes*, 604 F.2d 121, 156 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).