816 F.2d 673
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Carlos CAMPOS, Appellant.
UNITED STATES of America, Appellee,
v.
Jose Santo URRUTIA, Appellant.
UNITED STATES of America, Appellee,
v.
Jesus Bosilio HERNANDES, Appellant.
 Nos. 85-5583, 85-5584 and 86-5501.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1986.
Decided April 2, 1987.
 
 Before SPROUSE and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 
 
 1
 Kenneth W. Smith, for appellant Carlos Campos.
 
 
 2
 Dale C. Saliba, for appellant Jose Santo Urrutia.
 
 
 3
 Christopher Picot, for appellant Jesus Bosilio Hernandes.
 
 
 4
 Jack I. Hanly, Assistant United States Attorney (Justin W. Williams, United States Attorney, on brief), for Appellee.
 
 PER CURIAM:
 
 5
 Carlos Campos and Jose Urrutia were convicted of the robbery of bank funds by the use of a dangerous weapon, 18 U.S.C. Sec.Sec. 2113(a), (d), and 2, the use of a firearm in the commission of a crime of violence, 18 U.S.C. Sec.Sec. 924(c) and 2 and the interstate transportation of more than $5,000 in stolen funds, 18 U.S.C. Sec.Sec. 2314 and 2. Jesus Hernandes was acquitted on the robbery counts but convicted on the interstate transportation charge. On the appeals of all three defendants, we affirm.
 
 
 6
 About noon of September 5, 1985 a Wells Fargo armored service truck was driven into the parking lot of a shopping center in Arlington, Virginia. Charles Scruggs got out of the truck with a bag containing $40,000 in currency to be delivered to a savings and loan institution in the center. A man later identified by two witnesses as Campos approached with a drawn .45 caliber pistol and shot Scruggs in the chest. Campos and a man later identified as Urrutia then ran to the rear of the shopping center, along a bicycle path, and into a waiting Mazda sports car. Hernandes was waiting in the passenger seat. Campos climbed into the storage compartment behind the two passenger seats and Urrutia took the driver's seat and drove the car away.
 
 
 7
 About 2:00 o'clock that afternoon, the defendants drove through a toll plaza on Route 95 in Cecil County, Maryland. Two Maryland state troopers, Reilly and Berge, noticed that the automobile had only one Virginia license tag, instead of the requisite two, and the one tag was partially obstructed. They gave chase, and, after confirming that the partially obstructed license tag was from Virginia, they pulled the car over.
 
 
 8
 While Reilly was talking to the driver, Urrutia, Berge removed the plastic sun visor which was obstructing the one license tag. Reilly handed the visor to Urrutia who passed it on to Campos, who was then sitting in the passenger seat. Campos threw the visor out of the window on the righthand side. Berge told Campos to get out of the automobile and retrieve the visor. Campos did so, and Berge then saw a live round of .45 caliber ammunition on the passenger seat. Informed by Berge of what he had seen, Reilly desisted from the preparation of a traffic ticket for Urrutia, and the troopers ordered all three of the occupants of the vehicle to get out. Berge looked under the passenger seat and found eighteen live rounds of ammunition. He also saw a knife on the cover of the storage compartment. He then looked under the cover of the storage compartment where he found a cocked, loaded .45 caliber pistol that was later identified as the one used in shooting Scruggs. The three were then placed under arrest for handgun offenses under state law. One of the troopers looked again into the storage compartment and found a bank bag containing the money that was stolen that morning in Virginia.
 
 
 9
 The troopers transported the three defendants to a nearby state police barracks.
 
 
 10
 The defendants unsuccessfully sought suppression of the pistol and the money as the fruits of an unconstitutional search.
 
 
 11
 After a pretrial suppression hearing, the district court found that the initial stop was solely for violation of the traffic laws regulating the display of automobile license plates. It rejected the defendants' unsubstantiated assertion that they were stopped because they were Hispanic.
 
 
 12
 The finding is not clearly erroneous. See United States v. Porter, 738 F.2d 622, 625 (4th Cir.) (en banc), cert. denied, 469 U.S. 983 (1984).
 
 
 13
 There is no suggestion that the two troopers had any reason to believe that the three defendants were armed or that they were looking for any evidence of crime other than the traffic offense, for which Urrutia was being ticketed. When Berge saw the live round of ammunition on the passenger seat, however, the troopers had probable cause to believe that a firearm might be found nearby. See Kendrick v. Nelson, 448 F.2d 25, 27 (9th Cir. 1971). With the live cartridge in plain view, the subsequent search was reasonable.
 
 III.
 
 14
 Three witnesses identified Campos as the man with the gun and the money bag, though a fourth witness identified Urrutia as the gunman. Campos and Urrutia ask that their convictions be reversed because of the conflict in the identification testimony.
 
 
 15
 This contention is entirely devoid of merit. The only conflict in the identification testimony is the identity of that one of the two who wielded the gun and shot Scruggs. They were both convicted of the robbery offenses as principals and as aiders and abettors. Which one actually shot Scruggs was entirely irrelevant.
 
 
 16
 Moreover, the slight confusion in the identification testimony detracts not in the least from the overwhelming evidence of guilt. The pistol used in the shooting of Scruggs and the money bag containing the stolen money were both found in the storage compartment of their automobile.
 
 IV.
 
 17
 Hernandes challenges the sufficiency of the evidence to support his conviction for interstate transportation of stolen funds.
 
 
 18
 Hernandes gave a pretrial statement, and he testified at the trial as a witness. He admitted that he went with his two companions to the shopping center after having been told that they had a job to do. Upon arrival, he was told that "the job was ready." He waited in the Mazda for over two hours while Campos and Urrutia were in the parking lot awaiting the arrival of the armored truck. As soon as his two companions returned to the car, Campos told him that he had robbed the truck and shot the guard. Hernandes admitted that he expected to get a share of the stolen money.
 
 
 19
 This evidence was more than sufficient to support the finding that Hernandes was a participant in the interstate transportation of the stolen money.
 
 V.
 
 20
 After Urrutia and Hernandes had testified implicating him, Campus requested an instruction that accomplice testimony was inherently dubious. The request was denied. Such an instruction is desirable, but the failure to give the instruction is not necessarily reversible error. It is no reason for reversal in a case as this when Campus was found with the pistol with which Scruggs was shot and the stolen money. See United States v. Mercks, 304 F.2d 771, 772 (4th Cir.1962).
 
 VI.
 
 21
 Finally, all of the defendants complain of the admission of the testimony of an FBI agent about statements made to him by Hernandes through an interpreter at the police barracks shortly after the arrest. The interpreter was an Elkton City policeman who was fluent in Spanish. He was not involved in the investigation, and there was no suggestion that he had any motive to mislead or distort. Under the circumstances, the testimony of the agent was not hearsay, United States v. Da Silva, 725 F.2d 828, 831-32 (2d Cir.1983), and there is no Confrontation Clause problem for Campos and Urrutia, because Hernandes testified at the trial and was fully subject to cross-examination on his out-of-court statements as well as his trial testimony. See Nelson v. O'Neil, 402 U.S. 622, 629-30 (1971). The court gave the cautionary instruction required by Fed.R.Evid. 105, and Campos and Urrutia were entitled to no more.
 
 
 22
 AFFIRMED.