**UNITED STATES of America, Appellee,**

v.

**Elizabeth SABATER, Appellant.**

**No. 1227, Docket 87–1010.**

United States Court of Appeals, Second Circuit.

Argued June 18, 1987.

Decided Sept. 30, 1987.

R. Emmett Heaphy, New York City, for appellant.

Mark C. Hansen, New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Bruce A. Green, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, MESKILL and PRATT, Circuit Judges.

OAKES, Circuit Judge:

In pseudo-Perry Mason style, defense counsel substitutes a look-alike sister for the female co-defendant at the counsel table during the noon recess; the sister puts on the defendant's blazer and the defendant sits in the back of the courtroom. The witness, a police officer who that morning made a critical in-court identification on direct examination, is then led to say on cross-examination that he sees the same people in the courtroom. Asked "Where are they?" the witness replies, "Seated at the [defense] table."

"Is that both the people you are talking about?"

"Yes."

Defense counsel then asks the court "to take recognition" that the police officer had not identified his client.

This is the dramatic, if not unique, setting which principally gives rise to this appeal. We say "not unique" not just because defense counsel steadfastly maintained he had done it before "on other trials"; we say it because *United States v.*

*Thoreen,* 653 F.2d 1332, 1341 (9th Cir. 1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982), affirmed a conviction for criminal contempt as misbehavior obstructing justice where an attorney similarly placed a person who resembled the real defendant at counsel table without notifying either court or opposing counsel. *See also Miskovsky v. Oklahoma,* 586 P.2d 1104 (Okla.Crim.App.1978) (same). We affirm the judgment of conviction in the United States District Court for the Southern District of New York, following upon a jury trial before Judge John M. Cannella, for the sale of two vials of cocaine in a form commonly known as "crack," in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B).

On May 20, 1986, New York City Police Officer Dujardin Rosado, posing as a drug purchaser in the Bronx, was motioned toward the defendant Elizabeth Sabater by her to-be-acquitted co-defendant. Sabater stepped several feet into an alleyway, opened her hand, and displayed "numerous vials of crack" to Officer Rosado. He bought two of these in exchange for one $10 bill and two $5 bills of prerecorded currency. He then radioed descriptions of Sabater and the co-defendant to his back-up team, who promptly arrested and searched Sabater, finding the $20 in prerecorded currency. Rosado saw Sabater for a minute or so at the time of her arrest and again later the same evening in a group at the precinct station.

■ Appellant makes two arguments, one having to do with the admission of the prerecorded currency at trial and one having to do with what transpired after counsel had substituted Sabater's sister for her at the counsel table. Discussing the latter first, we preliminarily note how unnecessary the switch conducted by counsel was. Defense counsel, sitting next to the defendant at the counsel table during an experienced police officer's eyewitness identification testimony, in a trial where that identification is essential to the Government's case and where that witness is likely to be influenced by courtroom appearances, should have been alert to the propositions

this court has laid down in *United States v. Brown*, 699 F.2d 585, 593–94 (2d Cir.1983), and *United States v. Archibald*, 734 F.2d 938, 942–43 (2d Cir.1984). In *Brown*, Judge Mansfield's opinion said that:

> When a defendant is sufficiently aware in advance that identification testimony will be presented at trial and fears irreparable suggestivity, as was the case here, his remedy is to move for a line-up order to assure that the identification witness will first view the suspect with others of like description rather than in the courtroom sitting alone at the defense table.

699 F.2d at 594. In *Archibald*, we said that:

> A fairly short delay of proceedings was all that would have been required to rearrange the seating in the courtroom and to secure the presence of some people of the defendant's approximate age and skin color. While it was not necessary for the court to conduct a true *Wade*-type of lineup, these relatively minor steps were required to ensure that the identification was not unfair.

734 F.2d at 942. Counsel's substitution of Sabater's sister for the defendant, in which counsel had the sister don the blue-striped blazer that Sabater had worn during Officer Rosado's direct examination, was a trick, which misled the court, opposing counsel, and the witness, as well as the jury. In doing so he was in violation of D.R. 7–106(C)(5) of the ABA Model Code of Professional Responsibility, probably committed a violation of Rule 3.3 and Rule 3.4 of the ABA Model Rules of Professional Conduct, and failed to conform to the standards set in the ABA Standards for Criminal Justice, The Defense Function 4–9 (commentary on Standard 4–1.1). *See also* ABA Comm. on Ethics and Professional Responsibility, Informal Op. No. 914 (2/24/66).

Nevertheless, despite defense counsel's dubious tactics, the question here is whether the defendant had a fair trial. To examine that question properly, we must note in detail exactly what did take place following defense counsel's request that the court "take recognition" that Rosado had misidentified Sabater's sister as one of "these people in court" with whom Officer Rosado had done his business.

Judge Cannella quite properly ordered a recess and both the jury and the witness left the courtroom. The Government then strongly objected to defense counsel's tactics, and Judge Cannella told counsel that the court should have been informed and said of counsel's conduct, "I would almost label it unethical." He ruled that he would place the defendant and her sister together and would then direct Officer Rosado to make an identification. Defense counsel indicated a preference that the police officer make the identification from among the entire courtroom, but did not object when the court denied that request. Judge Cannella quite properly noted that had the defendant challenged the identification she could have requested a line-up, and indeed could still do so. *Cf. Brown*, 699 F.2d at 593–94. Counsel made no such request.

The judge, after directing that both the defendant and her sister sit at defense counsel table, then brought back the jury and Officer Rosado. Judge Cannella explained to the jury:

> Members of the jury, you will notice there are two people where the defendant was seated originally. You will also remember the last question asked of this officer was "Do you recognize the people sitting at the table?" and he said, "Yes." Now, what Mr. Heaphy had done in the meantime was to substitute the sister who is sitting alongside of her to the extent that even the jackets have been changed.

No objection was made to this statement. Then, in accordance with his previous ruling, Judge Cannella instructed Officer Rosado, "Now, you go over to where these two people are sitting and tell us what [*sic*] you think is the defendant in this case." Judge Cannella reminded the jury, "This witness has heard nothing about this, no more than you did. He was outside. He doesn't know about this at all." Then he again directed Officer Rosado, "You go over there and if you can, pick out the

person with whom you say you had the dealings." After the defendant and her sister stood and turned around, Officer Rosado identified Sabater.

Appellant's principal argument is that when Judge Cannella said to the jury that Mr. Heaphy had "substitute[d] the sister who is sitting alongside of her to the extent that even the jackets have been changed," he was calling Rosado's attention to the fact that the sister, rather than the defendant, was now wearing the blue-striped jacket. Rosado's original identification testimony had made specific reference to Sabater's blazer, and counsel argues that obviously a police officer who had previously identified the defendant as the one in the striped blazer would recognize that it was now the sister who had the striped blazer on. However, as counsel made no such objection at trial, this argument is unavailable now. *United States v. Carson,* 702 F.2d 351, 369 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983); Fed.R.Crim.P. 52(b); *see* 3A C. Wright, *Federal Practice and Procedure* § 856 (1982). Moreover, for all that Officer Rosado knew the sisters had switched jackets back during the recess following the disclosure of the substitution, even though they had not in fact done so. In addition, counsel emphasizes that Rosado's initial contact with Sabater was quite limited, and argues that the officer must have been uncertain as to the identification, making him more likely to pick up on any suggestion. But while the whole initial transaction had taken only "a few seconds" according to Rosado's testimony, he saw Sabater again when she was arrested by the back-up team, and for a third time that day at the police station, making his identification sufficiently reliable. *See Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (undercover narcotics officer's identification of defendant reliable where officer viewed defendant twice within seven-minute span); *United States v. Oglesby,* 764 F.2d 1273, 1278 (7th Cir.1985) (in-court identification by witness who had ample opportunity to observe defendant during bank robbery admissible); *United States v.*

*Gentile,* 530 F.2d 461, 468 (2d Cir.) (witness in-court identification of defendant, based on two encounters seventeen months earlier, was admissible, despite intervening suggestive circumstance), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976).

Police Officer Tate, who had made the arrest, testified after Officer Rosado, and stated that he did not recognize the female he had apprehended, although he did identify the male (Sabater's to-be-acquitted co-defendant). With no basis in the record, counsel argues that Rosado must have tipped off Tate as to the question of the identity of the female in the case, and therefore Tate was unsure as to who would be sitting at the defense table and did not risk making an incorrect identification. But this is pure surmise, which counsel did not follow up by interrogating Tate. Counsel, resourceful if ingenuous, argues further that if Rosado had tipped off Tate, "when [Rosado] knew it would be unethical to do so, how credible can his testimony be?" Because counsel's argument is based upon pure conjecture and he did not argue it to the jury, we do not think it merits discussion.

Sabater's second argument on appeal is that the $5 bill of prerecorded currency should not have been admitted at trial because the authentication requirement of Rule 901 of the Federal Rules of Evidence was not met. Officer Tate testified that he photocopied the currency that was to be used in the undercover investigation, placed identifying information on the photocopy, and gave the prerecorded money to Officer Rosado. Tate subsequently recovered $20 of the prerecorded money from the female defendant's jacket pocket, and, pursuant to Department practice, returned $15 of the money to the Police Department fund, and vouchered the remaining $5 bill by stamping it, putting his initials on it, and submitting it to the property clerk. In court he identified the $5 bill as the same $5 bill he had copied, recovered, and vouchered on May 20, based on the serial number and identifying markings he had made on the bill and the copy. This

identification plainly satisfied the criteria for admission under Fed.R.Evid. 901, *see United States v. Mendel*, 746 F.2d 155, 166–67 (2d Cir.1984), *cert. denied*, 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *United States v. Da Silva*, 725 F.2d 828, 830 n. 2 (2d Cir.1983).

Sabater argues that the currency was not adequately authenticated because the envelope in which the $5 bill was maintained by the property clerk differed from the envelope in which it was submitted by Officer Tate. But the $5 bill was not authenticated through proof of the chain of custody, but through Officer Tate's identification based upon markings he had placed on the bill, *Da Silva*, 725 F.2d at 830 n. 2. The assertion that the missing $15 cast doubt on the legitimacy of the $5 bill offered into evidence is equally without merit. The police evidently return all but the smallest bill recovered to the fund as a matter of practice. The evidence was clearly admissible, *Mendel*, 746 F.2d at 167.

Judgment affirmed.