[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11914
Non-Argument Calendar
_____

D.C. Docket No. 0:11-cr-60271-DMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LIKY DESIRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 19, 2012)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Liky Desire appeals his convictions for: (1) intent to evade currency

reporting, knowing concealment of more than $10,000 in United States currency,

and attempt to transport this currency from a place outside the United States to a place inside the United State in violation of 31 U.S.C. § 5332(a); (2) failure to report the transportation of currency in excess of $10,000 in violation of 31 U.S.C. § 5316(a)(1)(B); and (3) making a false statement to a federal officer in violation of 18 U.S.C. § 1001(a)(2).  On appeal, Desire argues that the district court violated the rule against hearsay and his confrontation rights when it permitted witness testimony regarding statements that he made in Creole, through interpreters, to law enforcement officers.  For the reasons set forth below, we affirm Desire's conviction.

I.

On September 30, 2011, at the Fort Lauderdale/Hollywood International Airport ("FLL Airport")[1], Desire arrived on an international flight from Haiti, carrying approximately $49,240, but, in violation of financial reporting requirements, he denied that he was carrying more than $10,000.  Related to this incident, Desire was indicted for the above-referenced offenses.

At trial, Jose Espinal, an officer with Customs and Border Protection ("CBP") who works at the FLL Airport, explained that, in addition to a customs

---

[1] "FLL" is the designated airport code for the Fort Lauderdale/Hollywood International Airport.

2

declaration form, travelers who are carrying more than $10,000 are required to complete a separate "FinCEN form." On September 30, 2011, Desire presented a customs declaration form, indicating that he did not have over $10,000. Officer Espinal asked Desire, in English, if he was bringing over $10,000 into the United States, and Desire responded that he had less than a hundred dollars. Officer Espinal also asked Desire, in English, if he was "bringing money for anybody else," and Desire said "No."

Officer Claudette Cooper, another CBP officer who works at the FLL Airport, testified that, when Desire presented his signed and completed declaration form, Desire indicated to her, in English, that he had packed his own bags, that he was not carrying anything for anyone else, and that he was not carrying more than $10,000. At this point, Officer Cooper checked Desire's "crossing records," which showed that on April 11, 2004, Desire had been "warned regarding $35,000," and on May 1, 2005, Desire declared that he was carrying $40,000. Desire had also filed three FinCEN forms in 2007.

After Officer Cooper asked for assistance from Officer Eugene Martin, Desire said that he did not understand the officers, and the officers requested an interpreter. The interpreter, "Philip," who worked for American Airlines, spoke Creole to Desire. Throughout the trial, Desire's counsel objected to any testimony

3

regarding statements that Desire made through an interpreter "based on hearsay and []confrontation." The court overruled the objections.

Officer Cooper testified that, based on her experience and training, Desire and Philip appeared to understand each other. Desire indicated, through Phillip, that he had $90 in his pocket. During this time, Officer Cooper searched Desire's bag and found two white envelopes and four black cellophane packages. As to the envelopes, Desire indicated, through Phillip, that he was carrying money for someone else. At some point, another airline representative named "Stephanie" arrived to replace Philip, and Stephanie also spoke with Desire in Creole. The officers took Desire into a search room, where Stephanie told Officer Martin that Desire had indicated that "he was carrying some money in his crotch."

Officer Martin testified that he knew that Phillip spoke Creole because Officer Martin had previously heard him speak the language. Further, Stephanie was the employee who the airline sends to "do all of the interpreting," so when she arrived, she excused Phillip. Ultimately, a pat down search of Desire revealed $12,000 in his "groin area," and, in total, the officers recovered approximately $49,240 from the search of Desire and his bags.

The parties stipulated that Desire had made 46 round trips between Haiti and the United States.

4

Finally, Desire testified that he was born in Haiti, and due to his shoe business, he travels back and forth between Haiti and the United States. When Desire travels internationally, he is required to complete a form, but he can not read the form, so other people help him complete it. On September 30, 2011, during his flight, he experienced dizziness, blurred vision, and an irregular heartbeat. Another passenger on the flight completed Desire's declaration form, and this passenger did not ask Desire how much money he was carrying. During the time when Desire was being searched at the airport, he communicated with law enforcement officers through an individual who spoke Creole. Desire advised the officers that he was carrying $22,000 of his own money, but he also had money for other people in his business.

Desire further testified that when he traveled to the United States in April 2004, a CBP officer told him that, in the future, he would have to declare when he carried more than $10,000. Later, when Desire traveled to the United States in May 2005 and April 2007, he declared $40,000. When he traveled to the United States in September 2011, Desire knew that he was carrying more than $10,000, but he did not know that he was legally obligated to report the money.

The jury found Desire guilty on all counts, and he received an 18-month sentence.

5

II.

We review evidentiary rulings for an abuse of discretion. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). Preserved evidentiary objections and violations of the Confrontation Clause are subject to the harmless error standard. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005); *United States v. Edwards*, 211 F.3d 1355, 1359 (11th Cir. 2000). Whether an error was harmless depends on a variety of factors, such as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

The Confrontation Clause of the Sixth Amendment prohibits the admission of testimonial, out-of-court statements, unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the declarant. *United States v. Jiminez,* 564 F.3d 1280, 1286 (11th Cir. 2009) (citing *Crawford v. Washington*, 541 U.S. 36, 52, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004)). "[T]he Confrontation Clause prohibits *only* statements that constitute

6

impermissible hearsay." *Id.*

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* at 1287 (quoting Fed.R.Evid. 801(c)). The Federal Rules of Evidence provide that a statement made by a party against whom it is offered is not hearsay. Fed.R.Evid. 801(d)(2)(A). Thus, admission of a defendant's own out-of-court statements is not hearsay and does not violate the Confrontation Clause. *United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006). Further, statements made by a party's authorized agent are also excluded from the definition of hearsay. Fed.R.Evid. 801(d)(2)(C) and (D). We have held that translations of a defendant's statements do not constitute impermissible hearsay and the interpreter acts as the defendant's agent, where the interpreter had sufficient capacity and no motive to mislead. *United States v. Alvarez*, 755 F.2d 830, 859-60 (11th Cir. 1985) (adopting the reasoning of *United States v. Da Silva*, 725 F.2d 828 (2d Cir.1983)). Specifically, when there is no motive to mislead and no reason to believe that a translation is inaccurate, the interpreter is no more than a "language conduit," and "a testimonial identity between the declarant and translator brings the declarant's admissions within Rule 801(d)(2)(C) or (D)." *Alvarez*, 755 F.2d at 860 (quoting *Da Silva*).

7

The district court did not abuse its discretion in admitting the statements that Desire made to the CBP officers through the interpreters. Evidence suggested that Phillip and Stephanie, the interpreters who worked for American Airlines, had sufficient capacity to interpret Desire's statements, and no evidence suggested that either interpreter had any motive to mislead the officers. As to capacity, Officer Cooper testified that, based on her training and experience, Desire and Phillip appeared to understand each other, and, although she could not understand what they were saying, she understood that they were communicating in Creole. Officer Martin also testified that he had heard Phillip speaking in Creole on prior occasions, and that Stephanie was the airline's designated interpreter. Additionally, Desire testified that he communicated with the CBP officers through an individual who spoke Creole, and he did not suggest that he had problems communicating with either interpreter. As to motive, Desire has not identified any evidence to suggest that the interpreters had a motive to mislead the CBP officers or to misrepresent Desire's statements. Because the interpreters appear to have had sufficient capacity to translate Desire's statements and no evidence suggested that their translations were inaccurate, their out-of-court translations of Desire's own statements were not hearsay and did not violate his confrontation rights. *See Alvarez*, 755 F.2d at 859-60; *Brown*, 441 F.3d at 1358-59.

8

Regardless, even if the district court should have excluded the statements based on the government's failure to more clearly establish capacity, any error was harmless. *Baker*, 432 F.3d at 1202; *Edwards*, 211 F.3d at 1359. As to the strength of the prosecution's overall case, Officers Espinal and Cooper both testified that Desire had told each of them, in English, that he was carrying less than $10,000 and that he was not carrying money for anyone else. However, evidence showed that Desire was, in fact, traveling with $42,240, and the defense presented evidence that $27,240 of the money belonged to other individuals. Although Desire presented testimony that he was not intentionally dishonest on his customs form because he was sick and unaware of the reporting requirement, other evidence established that he had traveled from Haiti to the United States approximately 46 times, and on at least three prior occasions, he had reported traveling with a large sum of cash. Moreover, Desire admitted that, in 2004, he was warned of his obligation to declare more than $10,000, and evidence showed that he complied with this obligation on at least two occasions after the warning. Thus, absent any testimony regarding the statements that Desire made through the interpreters, the government presented a strong case that Desire was aware of the financial reporting requirement, but he failed to report $42,240 and made false statements to CBP officers regarding how much money he was carrying. *See Van Arsdall,* 475

9

U.S. at 684, 106 S.Ct. at 1438.

Moreover, the statements that Desire made through the interpreters were cumulative and corroborated by other evidence in the record. *Id.* For example, through Philip, Desire denied carrying over $10,000, but Desire had already made the same denial, in English, to Officers Espinal and Cooper. Further, Desire stated to Officer Martin, through Stephanie, that he was carrying money for someone else, but this statement was consistent with his own trial testimony. Although Desire told CBP officers, through Stephanie, that he was carrying money in his groin area, he does not challenge the search that revealed this money, and it is unclear how his admission to carrying the money prejudiced his defense. In sum, Desire fails to identify any statement that he made to CBP officers through an interpreter that was not established through other evidence or that substantially prejudiced his defense.

For the foregoing reasons, we affirm Desire's convictions.

**AFFIRMED.**

10