[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14080
_____

D.C. Docket No. 1:12-cr-20425-FAM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MANOUCHEKA CHARLES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 25, 2013)

Before BARKETT and MARCUS, Circuit Judges, and CONWAY,[*] District Judge.

BARKETT, Circuit Judge:

_____

[*] Honorable Anne C. Conway, Chief Judge, United States District Court for the Middle District of Florida, sitting by designation.

Manoucheka Charles, a Haitian national, appeals from her conviction for knowingly using a fraudulently altered travel document in violation of 18 U.S.C. § 1546(a).  Charles, who speaks Creole and does not speak English, argues that her conviction must be reversed because the only evidence to support the charge that she knowingly used a fraudulently altered travel document was the third-party testimony of a Customs and Border Protection ("CBP") officer as to the out-of-court statements made by an interpreter who translated Charles's Creole language statements into English during the CBP officer's interrogation of Charles.[1]  On appeal, Charles argues that the erroneous admission of the CBP officer's trial testimony of what the interpreter said to him violated her Sixth Amendment Confrontation Clause rights.

## I.  Factual and Procedural Background

Charles arrived at the Miami International Airport from Haiti and presented her travel documents to a CBP officer.  These included her Haitian passport, a customs declaration form, and Form I-512, which provides authorization for persons to travel in and out of the United States while they are in the process of gaining legal immigration status.  The first CBP officer, who did not speak Creole, referred Charles to a second CBP officer, who checked the I-512 document against

---

[1] The only disputed issue at trial was whether Charles knew the I-512 was fraudulent. The only evidence of Charles's knowledge was the testimony of the CBP officer as to what the interpreter told him Charles said during the interrogation.

2

a computer database and discovered that the name and date-of-birth associated with the I-512 in the database was not the same as the one on the I-512 that Charles presented. Charles was then sent to secondary inspection, where she was interrogated by a third CBP officer, who also did not speak Creole, but who used an over-the-phone interpreter service under contract with the Department of Homeland Security to allow him to conduct his interrogation. The interpreter on the phone translated from English to Creole the CBP officer's questions for Charles as well as translated from Creole to English Charles's responses to the CBP officer's questions.

At trial, the government did not call the interpreter to testify. Instead, the government presented the testimony of the three CBP officers to establish what happened at the airport. The third CBP officer, who conducted the interrogation through the interpreter, told the jury what the interpreter told him Charles had said. He testified that the interpreter told him that Charles stated that she did not receive the I-512 from United States authorities, but that she received the document about a month after she provided her photograph and passport to a man who offered to help her and that she did not pay anything for the document. The officer also testified that when she was asked, through the interpreter, where she was planning to live in the United States, she provided a relative's address in Key West. When she was asked, through the interpreter, why the address on the I-512 was different

than the Key West address, she said "the form was already given to her completed."   He then testified that Charles also stated, through the interpreter, that "when she sat down [on the plane], she started reading the document and she noticed that the document was illegal because it didn't fit her profile."[2]

Because the government did not call the interpreter as a witness, Charles did not have an opportunity to cross-examine the interpreter regarding what any of Charles's purported statements meant or what specific words or phrases Charles actually used.  For example, when the interpreter supposedly said that Charles told her the document "didn't fit her profile," defense counsel had no opportunity to cross-examine the interpreter regarding whether Charles used those actual words or different words which the interpreter characterized as not "fit[ting] her profile."  Likewise, when the interpreter said Charles knew the form was "illegal," there could be no cross-examination about what actual words Charles used and whether the words she used in Creole could have had other meanings than "illegal."

## II.  Discussion

On appeal, Charles argues that her Confrontation Clause rights were violated by the admission of the CBP officer's in-court testimony as to the interpreter's English language out-of-court statements, without the opportunity to cross examine

---

[2] The government also read into the record the parties' stipulation that the interpreter was a Creole interpreter, who speaks fluent English and Creole, and had interpreted Charles's interview with the CBP officer.

4

the interpreter.  Our review of this argument is for plain error because Charles did not object during her trial to the CBP officer's testimony as a violation of her rights under the Confrontation Clause.  Under plain error review, we cannot correct an error that was not raised at trial unless: (1) there was error; (2) that was plain; (3) that affected the defendant's substantial rights; and (4) we determine that it that seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  See United States v. Arbolaez, 450 F.3d 1283, 1291 (11th Cir. 2006) (applying plain error review to a Confrontation Clause violation raised for the first time on appeal).  Accordingly, we first must determine whether it was erroneous under the Confrontation Clause to admit the CBP's officer's testimony.  See United States v. Olano, 507 U.S. 725, 732 (1993) ("The first limitation on appellate authority . . .  is that there indeed be an 'error.'").

The Confrontation Clause to the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In Crawford v. Washington, 541 U.S. 36, 59 (2004), the Supreme Court explained that under the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine" the declarant.  (Emphases added).  In

5

reiterating the genesis of this understanding of the Confrontation Clause, the Court made several critical observations about the long-standing meaning of this right.

First, the Court in Crawford explained that the Confrontation Clause is concerned with witnesses against the defendant, "in other words, those who 'bear testimony.'" 541 U.S. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). And testimony itself has a particular meaning, in that it is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. Testimonial statements are ones "that declarants would reasonably expect to be used prosecutorially[.]" Id. The Confrontation Clause, therefore, "reflects an especially acute concern with a specific type of out-of-court statement." Id. That concern is with testimonial statements made out of court by a declarant whom the defendant has a constitutional right to confront through cross-examination.[3]

Next, the Court explained that "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 53–54; see also United States v. Baker, 432 F.3d 1189, 1203 (11th Cir. 2005) (same). Unavailability of the declarant and the prior

---

[3] The Court distinguished testimonial statements, which, it explained "interrogations by law enforcement officers fall squarely within," id. at 53, from, for example, a "casual remark to an acquaintance," id. at 51.

6

opportunity to cross-examine the declarant are limitations required to satisfy the Sixth Amendment. Id. at 54 (noting that the constitution does not suggest exceptions to the confrontation requirement). The Court held that the prior opportunity for cross-examination was not merely sufficient, but rather "dispositive" for the admissibility of testimonial statements. Crawford, 541 U.S. at 55–56.

Finally, in clarifying the appropriate test under the Confrontation Clause for admitting testimonial out-of-court statements of a declarant, the Court in Crawford overruled the test that it previously laid out in Ohio v. Roberts, 448 U.S. 56 (1980).[4] The Court noted that in Roberts, the introduction of all out-of-court statements was permitted so long as they fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." Crawford, 541 U.S. at 60. In Crawford the Court rejected this test as it applies to testimonial out-of-court statements as too narrow, permitting the admission of such statements "upon a mere finding of reliability." Id. Indeed, the Court explained that "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of reliability." Id. at 61. "Leaving the regulation of out-

---

[4] The Court limited its holding in Crawford to testimonial statements and declined to definitely resolve whether the Confrontation Clause applies to non-testimonial out-of-court statements. Id. at 61.

of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." Id. at 51; see also id. at 50–51 ("[W]e once again reject the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon the law of Evidence for the time being.") (quotation marks omitted). Instead, the constitution commands that "reliability [of testimonial statements] be assessed in a particular manner: by testing in the crucible of cross-examination." Id. at 61.

Under Crawford's framework, as explained below, we find that Charles has a Sixth Amendment right to confront the interpreter, who is the declarant of the out-of-court testimonial statements that the government sought to admit through the testimony of the CBP officer.

As an initial matter, there is no debate that the statements of the interpreter as to what Charles said are "testimonial." The CBP officer conducted the interrogation of Charles while she was detained at the airport and was suspected of knowingly using a fraudulent document to gain entry to the United States. We have said that "[s]tatements taken by police officers in the course of interrogations are definitively testimonial" and thus fall within the protection afforded by the Confrontation Clause. Baker, 432 F.3d at 1204 (quotation marks and emphasis omitted); see also Crawford, 541 U.S. at 53 n.4. This includes not only "technical

8

legal" interrogations but also "witness statements given to an investigating police officer." Arbolaez, 450 F.3d at 1291 (quotation marks omitted). Moreover, the government sought admission of the interpreter's statements of what Charles said to prove the truth of those statements. See Crawford, 541 U.S. at 59 n.9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."). Thus, the interpreter's English language statements of what Charles told her in Creole are testimonial and subject to Crawford's mandate governing the Confrontation Clause.

Next, although the CBP officer testified as if the out-of-court statements were made by Charles directly to him in English, they were not. Instead, his questioning of Charles was accomplished in two different languages, requiring the services of a language interpreter. Thus, for purposes of the Confrontation Clause, there are two sets of testimonial statements that were made out-of-court by two different declarants. Charles is the declarant of her out-of-court Creole language statements and the language interpreter is the declarant of her out-of-court English language statements.

The only possible out-of-court statements to which the CBP officer could testify to in court are the English language statements of the interpreter. When the CBP officer asked questions in English, the interpreter orally translated them into Creole for Charles. Charles then spoke to the interpreter in Creole, who in turn

9

orally translated Charles's statements from Creole into English for the CBP officer. The CBP officer only heard Charles speak in Creole and never heard any statements from Charles in English. Thus, during the trial when the CBP officer testified as though the statements were made by Charles in English, he was actually testifying to the out-of-court statements of the interpreter. In other words, the interpreter made the testimonial statements to the CBP officer, and, accordingly, is the declarant of the English-language statements that the CBP officer heard and testified to at trial.

Moreover, given the nature of language interpretation, the statements of the language interpreter and Charles are not one and the same. Interpretation is the oral form of transferring meaning from one language, known as the "source" language, into another language, known as the "target" language. See Cultural Issues in Criminal Defense 153 (Linda Friedman Ramirez ed., 3d ed. 2010); see also Webster's Third New International Dictionary Unabridged 1182 (1993) (defining an interpreter as "one that translates; esp: a person who translates orally for parties conversing in different tongues"). Language interpretation, however, does not provide for a "one-to-one correspondence between words or concepts in different languages." National Association of Judiciary Interpreters and Translators, Frequently Asked Questions about Court and Legal Interpreting and Translating, http://www.najit.org/certification/faq.php#techniques (last visited June

10

17, 2013).  "Rather than word for word, then, interpreters render meaning by reproducing the full content of the ideas being expressed. Interpreters do not interpret words; they interpret concepts."  Id.   Language interpreters typically "[c]onvert concepts in the source language to equivalent concepts in the target language."  U.S. Dep't of Labor, Bureau of Labor Statistics, Occupational Outlook Handbook (2012–13 ed.), available at http://www.bls.gov/ooh/media-and-communication/interpreters-and-translators.htm#tab-2.

As one scholar has noted, there are many forces, such as differences in dialect and unfamiliarity of colloquial expressions, which "operate to frustrate the interpretation of semantic meaning."  Muneer I. Ahmad, Interpreting Communities: Lawyering Across Language Difference, 54 UCLA L. Rev. 999, 1035 (2007).  Not only does a language interpreter face obstacles in trying to convey the semantic meaning of a speaker's words but language interpretation necessarily requires the interpreter also to understand "the contextual, pragmatic meaning of specific language" so that "much of the information required to determine the speaker's meaning is not contained in the words of the speaker, but instead is supplied by the listener."  Id. at 1036.

Accordingly, because Charles has the right, under the Confrontation Clause, to confront the "declarant," that is the person who made the out-of-court statement,

11

she has the right to confront the Creole language interpreter about the statements to which the CBP officer testified to in court.

The government, however, relying on our circuit's decision in United States v. Alvarez, 755 F.2d 830, 860 (11th Cir. 1985), argues that we should treat the interpreter's out-of-court statements as if they are the defendant's own and thus, consider Charles to be the declarant of those statements for purposes of the Confrontation Clause analysis. Contrary to the government's assertion, Alvarez and the Second Circuit case which it essentially adopted, United States v. Da Silva, 725 F.2d 828 (2d Cir. 1983), do not hold that a foreign-language speaking defendant is the "declarant" of the English-language statements of an interpreter.

In Alvarez, a case in which the Confrontation Clause was never raised or addressed, we held that a witness's in-court testimony of an interpreter's out-of-court oral translations of the defendant's statements are admissible as non-hearsay under Federal Rules of Evidence 801(d)(2)(C) or (D).[5]  755 F.2d at 860.  The interpreter's statements were not admitted as the defendant's own statements under

---

[5] Those rules provide that:

 . . . (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . .

(2) An Opposing Party's Statement. The statement is offered against an opposing party and . . .

(C) was made by a person whom the party authorized to make a statement on the subject;

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . .

12

Rule 801(d)(2)(A), but instead were treated either as a statement "made by a person whom the party authorized to make a statement on the subject," Fed. R. Evid. 801(d)(2)(C), or as "made by the party's agent or employee on a matter within the scope of that relationship," Fed. R. Evid. 801(d)(2)(D).

Thus, we viewed the interpreter, for hearsay purposes, as an agent of the defendant, thereby making the interpreter's statements of what the defendant said attributable to the defendant. Alvarez, 755 F.2d at 860. In reaching this conclusion, the court in Alvarez adopted verbatim and without any independent analysis, the reasoning and conclusion of the court in Da Silva, wherein the Second Circuit treated the interpreter as an agent of the defendant so long as the interpreter "has a sufficient capacity, and there is no motive to misrepresent." Alvarez, 755 F.2d at 860 (quoting Da Silva, 725 F.2d at 832). Under these circumstances, the court in Da Silva noted that it would be appropriate to find the existence of an agency relationship between the defendant and the interpreter, making the interpreter a "language conduit" of the defendant for hearsay purposes. 725 F.2d at 832 (quoting United States v. Ushakow, 474 F.2d 1244, 1245 (9th Cir. 1973)).[6]

---

[6] Other circuits that have considered the same question have also concluded that interpreter statements of translations of the defendant's statements are admissible under Rules 801(d)(2)(C) or (D), i.e. that the interpreter was either an agent of the defendant or authorized by the defendant to speak on the defendant's behalf. Generally, to admit such statements under the hearsay rules, courts are required to consider several factors demonstrating the reliability of the interpretation, including "which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated."

While Alvarez and Da Silva hold admissible, under the hearsay rules, a witness's testimony of an interpreter's out-of-court statements of what the defendant said, neither case holds that the defendant is the declarant of the interpreter's statements.[7] Indeed, Da Silva, which our circuit adopted in Alvarez without any separate analysis, specifically rejected the characterization of the interpreter's statements as the same as the defendant's own statements.

In Da Silva, as in Charles's case, a law enforcement officer interrogated the defendant, who spoke Spanish, through the interpretation assistance of a certified Spanish language interpreter. 725 F.2d at 829. At trial, the government's evidence included the law enforcement officer's testimony of the interpreter's oral translations of the defendant's answers during the interrogation. Id. at 830. On appeal, the Second Circuit considered whether this testimony was admissible under the hearsay rules. Id. at 831–32. The court first explained that had the law enforcement officer spoken directly with the defendant and could have himself testified to the defendant's answers, his testimony as to the defendant's statements

United States v. Nazemian, 948 F.2d 522, 527 (9th Cir. 1991); see also United States v. Orm Heing, 679 F.3d 1131, 1139 (9th Cir. 2012); United States v. Vidacak, 553 F.3d 344, 352 (4th Cir. 2009); United States v. Sanchez-Godinez, 444 F.3d 957, 960–61 (8th Cir. 2006); United States v. Cordero, 18 F.3d 1248, 1252–53 (5th Cir. 1994).

[7] Neither of these cases raised the claim that the admission of the interpreter's statements through the third-party witness violated the Confrontation Clause. Thus, the courts did not have before them the question of whether the declarant, for purposes of the defendant's constitutional right to confrontation, was the interpreter.

14

would have been non-hearsay under Rule 801(d)(2)**(A)**, which treats as non-hearsay the <u>defendant's own statement</u>.[8]  <u>Id.</u> at 831.  But the court noted that the law enforcement officer could <u>not</u> testify to what the defendant had said, but instead could testify only to what the interpreter told him the defendant had said and therefore did <u>not</u> treat the testimony as the <u>defendant's own statement</u> under Rule 801(d)(2)**(A)**.  <u>Id.</u>  Instead, the court in <u>Da Silva</u> treated the interpreter as the "agent" of the defendant, making the interpreter's oral translation attributable to the defendant and thus, admissible under Rules 801(d)(2)**(C) or (D)** of the rules of evidence.  <u>Id.</u>

Had the Second Circuit in <u>Da Silva</u>, or for that matter, our court when adopting <u>Da Silva</u> in <u>Alvarez</u>, viewed the interpreter's statements as the defendant's own statements then it simply would have admitted them under Rule 801(d)(2)(A) and have had no need to look to Rules 801(d)(2)**(C) or (D)**, which permit the admission of statements made by a declarant who is <u>not</u> the defendant, but rather someone authorized to speak for the defendant.  The court recognized that there is a meaningful distinction between a defendant's own statements made directly to the testifying witness (admissible under Rule 801(d)(2)(A)) and ones

---

[8] Specifically, at the time <u>Da Silva</u> was decided, Rule 801(d)(2)(A) provided that a statement was a non-hearsay admission if "[t]he statement is offered against a party and is (A) his own statement . . . ."  <u>Da Silva</u>, 725 F.2d at 831 (citing Fed. R. Evid. 801(d)(2)(A)).  The current version of Rule 801(d)(2)(A) provides that a statement that is offered against a party is admissible if it "(A) was made by the party in an individual or representative capacity."

that are merely attributable to him as the defendant's admissions made through the statements of another person to the testifying witness (admissible under Rule 801(d)(2)(C) or (D)).  Both types of testimony are admissible, but only under distinct hearsay rules of evidence because they entail conceptually different views of whether the defendant is the declarant of the statements that are being testified to in court.

Moreover, the characterization in Da Silva and Alvarez of an interpreter as a "language conduit" is not a determination on the question of whether the defendant is the declarant of the interpreted statements for purposes of the Confrontation Clause.  In referring to an interpreter as a "language conduit," the court in Da Silva did so in the context of concluding that an interpreter may be treated as the defendant's agent, for purposes of the hearsay rules, so long as the interpreter "has no motive to mislead" and there is "no reason to believe the translation is inaccurate."  725 F.2d at 832; see also Alvarez, 755 F.2d at 860 (finding the reasoning of the Second Circuit in Da Silva regarding the inferred agency between an interpreter and defendant as persuasive).  Under these circumstances, the interpreter is perceived as orally translating the words of the defendant competently for purposes of hearsay.  Da Silva's view of an interpreter as a "language conduit," adopted by our circuit in Alvarez, was premised on the court's assessment of the interpreter's reliability and trustworthiness, principles supporting

16

the admissibility of the interpreter's statements under Rules 801(d)(2)**(C) or (D)**, but having no bearing on the Confrontation Clause.  See Bullcoming v. New Mexico, 564 U.S. —, —, 131 S. Ct. 2705, 2720 n.1 (2011) (Sotomayor, J., concurring) ("The rules of evidence, not the Confrontation Clause, are designed primarily to police reliability; the purpose of the Confrontation Clause is to determine whether statements are testimonial and therefore require confrontation.").[9]

Even though an interpreter's statements may be perceived as reliable and thus admissible under the hearsay rules, the Court, in Crawford, rejected reliability as too narrow a test for protecting against Confrontation Clause violations.  See

---

[9] The special concurrence takes the position that it is not so obvious that the identity of the declarant of the out-of-court statements to which the CBP officer testified to in court is the Creole interpreter.  Indeed the special concurrence reads our decision in Alvarez and other circuit court decisions as treating "the foreign-language speaker as the declarant and the interpreter merely as a 'language conduit' for the speaker."  Special concurrence at n.2.  However, as explained herein, Alvarez, in adopting Da Silva, specifically rejected the option of admitting the interpreter's statements as the defendant's own, thus necessarily viewing the interpreter as the declarant of only her own statements.  Contrary to the special concurrence's statement, courts use the "language conduit" theory not to establish the defendant as the declarant of the out-of-court statements but instead to establish the competence and trustworthiness of the interpreter so that the interpreter's out-of-court statements on their own can be admitted under the criteria of Rules 801(d)(2)(C) or (D).  Unlike the special concurrence, we find unpersuasive the Ninth Circuit's use of the language conduit theory and its underlying factual considerations to conclude that the interpreter and defendant are identical for testimonial purposes.  See e.g., United States v. Nazemian, 948 F.2d 522, 528 (9th Cir. 1991).  None of the factors, i.e. who supplied the interpreter, motive to mislead, or qualifications and skills, that courts consider when deciding whether to admit, under Rules 801(d)(2)(C) or (D), an interpreter's otherwise inadmissible hearsay statements bear upon the basic fact that the interpreter is the speaker (declarant) of the out-of-court English language statements that are being testified to in court by a third party.  And it is the declarant who is subject to the requirements of the Confrontation Clause.

541 U.S. at 60 ("This malleable standard [of reliability] often fails to protect against paradigmatic confrontation violations."); id. at 61 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to . . . amorphous notions of reliability.").  Instead, the Court held that the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."  Id.; see also id. at 68–69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").[10]  And since Crawford, the Court has emphatically reiterated its rejection of a reliability standard, which may be sufficient under the rules of evidence, but does not satisfy the Confrontation Clause.  See Bullcoming, 564 U.S. at —, 131 S. Ct. at 2715 (explaining the Court had "settled in Crawford that the 'obviou[s] reliab[ility]' of a

_____

[10] In United States v. Jimenez , 564 F.3d 1280, 1286 (11th Cir. 2009), we stated "[t]here can be no doubt that the Confrontation Clause prohibits only statements that constitute impermissible hearsay." (emphasis in original).   To the extent that this statement has been misread as laying out a rule that the Confrontation Clause is satisfied by conducting an analysis of the challenged testimony under the Federal Rules of Evidence governing hearsay, such a reading would be directly contrary to Crawford's clear teaching that the when testimonial evidence is at issue, what matters is the unavailability of and a prior opportunity to cross-examine the declarant.   Crawford, 541 U.S. at 68.  In Jimenez , the statements at issue were not testimonial as they were not being offered for the truth of the matter, and thus, did not implicate the Confrontation Clause.

As Crawford instructs, a proper Confrontation Clause analysis does not begin or end with a determination of whether a statement constitutes "impermissible hearsay."  Instead, a proper analysis first requires a determination of whether the declarant's statement is "testimonial," i.e. a declaration offered for the purpose of proving some fact to be used at trial, and if so, the Sixth Amendment is satisfied only if the declarant is unavailable and there was a prior opportunity for cross-examination.

testimonial statement does not dispense with the Confrontation Clause.") (internal citation omitted); see also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319 n.6 (2009) ("The analysts who swore the affidavits provided testimony against Melendez–Diaz, and they are therefore subject to confrontation; we would reach the same conclusion if all analysts always possessed the scientific acumen of Mme. Curie and the veracity of Mother Theresa.").

Thus, neither Alvarez, nor Da Silva upon which it is based, hold that the defendant is the declarant of the statements made by the interpreter to the testifying third-party witness, and thus, do not resolve Charles' Confrontation Clause claim.[11] Rather, Crawford and the Supreme Court's post-Crawford jurisprudence govern our resolution of Charles's Confrontation Clause claim. In addition to Crawford, the Supreme Court has emphatically reiterated, in Melendez-Diaz and Bullcoming, that where the admission of an absent declarant's testimonial statements is at issue, the Confrontation Clause permits their admission only if the declarant is legitimately unavailable to testify and only if the defendant has had a prior

---

[11] In so holding, Alvarez, may remain the law in our circuit for purposes of the admissibility of interpreter statements under Rules 801(d)(2)(C) or (D). However, as the Court made clear in Crawford, where testimonial statements are concerned, the Sixth Amendment's protection cannot be left to the "vagaries of the rules of evidence," which may sweep too broadly or too narrowly to comport with the Sixth Amendment's Confrontation Clause. See 541 U.S. at 60-61. Thus, where a defendant challenges the admissibility of evidence, he may do so both as a violation of the rules of evidence as well as a violation of his Sixth Amendment right to confrontation, the resolution of which necessarily entail two distinct inquiries.

opportunity to cross-examine the declarant.  Crawford, 541 U.S. at 53–54;

Melendez-Diaz, 557 U.S. at 309, 311; Bullcoming, 131 S. Ct. at 2713.

In Melendez-Diaz, in a "rather straightforward application of [its] holding in

Crawford," the Court held that a forensic laboratory report identifying a substance

as cocaine was testimonial for purposes of the Confrontation Clause because it had

been created to serve as evidence in a criminal proceeding.  557 U.S. at 310–12.

The Court held that the affiants to the report sought to be introduced were

witnesses subject to confrontation and the defendant "was entitled to be confronted

with the analysts at trial." Id. at 311.  The Court rejected the argument that the

laboratory report was sufficiently reliable such that confrontation of the forensic

analysts would serve little purpose because their testimony was the "resul[t] of

neutral, scientific testing" and the analysts would have little reason to change the

results of their tests.  Id. at 317.  The Court explained that this argument was no

more than an attempt to return to Roberts' "trustworthiness" standard for the

admissibility of evidence under the Confrontation Clause despite Crawford's

command that the "Constitution guarantees one way: confrontation." Id. at 317–

18.  Likewise in Charles's case, the interpreter's statements are testimonial as they

were specifically obtained for use in a criminal investigation and the fact that the

interpreter may be competent does not exempt the interpreter from cross-

20

examination.[12]  If, as we know from Melendez-Diaz, even results of "neutral, scientific testing," do not exempt the witness who performed the test from cross-examination, certainly the Confrontation Clause requires an interpreter of the concepts and nuances of language to be available for cross-examination at trial.[13]

More recently, the Supreme Court's decision in Bullcoming makes clear that the CBP officer's testimony cannot substitute for confrontation of the interpreter regarding her testimonial statements.  In Bullcoming, the Government introduced into evidence a forensic laboratory report containing a testimonial certification through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the reported test.  131 S. Ct. at 2713.  The state

---

[12] The parties stipulated only that the interpreter was fluent in Creole and English and that she interpreted the interrogation of Charles by the CBP officer.  We know nothing of her background, education, training, or aptitude in language interpretation.  Nonetheless, even if she is a highly competent language interpreter, Crawford, Melendez-Diaz and Bullcoming require that she be made available for confrontation regarding her testimonial statements.

[13] Although Crawford, Melendez-Diaz, and Bullcoming leave no doubt that not even the highest degree of reliability of a testimonial statement will satisfy the Confrontation Clause, we note that the process of language interpretation is arguably much less "reliable" than the process of scientific forensic laboratory testing, which the Supreme Court was not persuaded to exempt from confrontation.  As one scholar has succinctly put it, "not only is language inherently ambiguous, so, too, is interpretation."  Ahmad, supra, at 1036.  In addition to the difficulty in accurately conveying the semantic meaning of language,

> [T]he task of interpreting the intended meaning of a particular utterance—that is, providing the contextual, pragmatic meaning of specific language—is even more profound. While words and grammatical structure may signal the speaker's intended meaning, they do not represent it exactly. Rather, the listener must rely upon a number of additional, external sources of information to resolve the otherwise ambiguous pragmatic meaning. . . . [M]uch of the information required to determine the speaker's meaning is not contained in the words of the speaker, but instead is supplied by the listener.

Id.

21

supreme court upheld the introduction of the report, without proof of the unavailability of or the defendant's prior opportunity to cross-examine the certifying analyst, on the grounds that the forensic analyst who testified in court about the report was an adequate substitute. Id. at 2714. The state court explained that the analyst who testified was qualified as an expert and could testify as to the operation of the machine and the established laboratory procedures. Id. at 2713. Moreover, the state court reasoned, the certifying analyst was merely a "scrivener" simply reporting "a machine-generated number" that did not call for any "interpretation or exercise of independent judgment." Id. at 2714–15.

The Supreme Court, in no uncertain terms, rejected the state court's reasoning. "[T]he comparative reliability of an analyst's testimonial report drawn from machine-produced data does not overcome the Sixth Amendment bar." Id. at 2715. Instead, the Court explained that the forensic analysts "who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'" Id. (quoting Melendez-Diaz, 557 U.S. at 319 n.6.). Accordingly, the Court concluded that "the [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." Id. at 2716; see also United States v. Ignasiak, 667 F.3d 1217,

22

1230–33 (11th Cir. 2012) (applying Bullcoming to reject as a violation of the Confrontation Clause the in-court testimony of a medical examiner as not being a "constitutionally adequate surrogate for the actual medical examiner who performed the autopsy").

The same rationale applies to the CBP officer's testimony of the interpreter's statements.  First, like the "surrogate" forensic analyst in Bullcoming, the CBP officer is the "surrogate" for the interpreter.  Second, even though the certifying analyst was seen as a "mere scrivener" who was just reporting numbers generated from a machine, the Supreme Court held that the reliability of the certifying analyst's report of these machine generated numbers could not satisfy the Confrontation Clause, absent his unavailability for confrontation.  Bullcoming, 131 S. Ct. at 2714–15.  The Supreme Court could not have been clearer that reliability, absent cross-examination, is irrelevant for purposes of the Confrontation Clause.  If the Court in Bullcoming required the certifying analyst to be subject to cross-examination, rejecting any, albeit expert, "surrogate" third-party testimony, so too must a language interpreter and not a substitute third party be subject to cross-examination.  Id. at 2715.  Treating the CBP officer as a "surrogate" for the interpreter, a much less suitable substitute than the expert testifying in Bullcoming, does not satisfy Charles's constitutionally protected right to cross-examination of the interpreter.  Thus, under the circumstances of this case, it is the interpreter who

23

is subject to "the only indicium of reliability sufficient to satisfy constitutional demands," that is: confrontation.  Crawford, 541 U.S. at 69.[14]

Accordingly, having concluded that it was a violation of Charles's Sixth Amendment right to confrontation to admit the CBP officer's testimony of the interpreter's statements of what Charles said where Charles had no opportunity to cross-examine the interpreter, we must next determine whether this error was plain. See Olano, 507 U.S. at 734 ("The second limitation on appellate authority . . . is that the error be 'plain.'").  Here, we cannot say that the error in admitting the CBP officer's testimony was "plain" as there is no binding circuit precedent (prior to our decision here) or Supreme Court precedent clearly articulating that the declarant of the statements testified to by the CBP officer is the language interpreter.  See United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) ("[T]he law of this

---

[14] The government seems to suggest that we should hold Charles accountable for the missed opportunity to cross-examine the interpreter given her Sixth Amendment right to compel witnesses in her favor.  The government's argument misunderstands its obligation to produce witnesses against the defendant.  In Melendez-Diaz, the Court clearly held that it is the government who must produce witnesses adverse to the defendant.  "The text of the [Sixth] Amendment contemplates two classes of witnesses—those against the defendant and those in his favor.  The prosecution must produce the former . . . ."  Melendez-Diaz, 557 U.S. at 313.  Indeed the Court rejected this exact argument in Melendez-Diaz because "[c]onverting the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law or the Compulsory Process Clause" would leave the defendant bearing the consequences of "adverse-witness no-shows."  Id. at 324.  "More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court."  Id.

And although we may even agree that there are "other ways—and in some cases better ways—to challenge or verify the results of [the interpretation]. . . . [t]he Constitution guarantees one way: confrontation. We do not have license to suspend the Confrontation Clause when a preferable trial strategy is available."  Melendez-Diaz, 557 U.S. at 318

24

circuit [is] that . . . there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving" the issue.).[15]

_____

[15] The special concurrence would decline to resolve whether it was error to admit the interpreter's statements under the Confrontation Clause stating that our court generally does not determine whether there was error when we can dispose of a claim on one of the other outcome-determinative elements of the plain error standard. While it may be prudent in certain cases, the test calls for a determination of whether error occurred in the first instance. In Olano, the Supreme Court clearly articulated that appellate courts must answer three questions before providing relief upon plain error review. The first of those steps is to ask whether there was error. Olano, 507 U.S. at 732. Accordingly, we have done so here. Second, courts then ask whether that error was plain. Id. at 734. We have done this as well, concluding that it was not, thus ending our inquiry. Had we concluded otherwise, we would have had to determine whether such plain error affected Charles's substantial rights. Id. Moreover, our Court does not always assume arguendo that there was error or skip to the outcome-determinative prong of the plain error test. See e.g., United States v. Rodriguez, 398 F.3d 1291, 1306 (11th Cir. 2005) (finding error that was plain but denying claim as defendant failed to satisfy the third prong of plain error review by showing that the error affected his substantial rights); United States v. Cano, 289 F.3d 1354, 1364 n.23 (11th Cir. 2002) (concluding admission of witness's testimony was error and that it was plain but that it nonetheless did not affect his substantial rights).

The special concurrence's position is that we should apply this prudential rule of abstention here because a constitutional question is at issue. We do not quarrel with the premise that constitutional avoidance can be compelling in some cases. However, here, the only issue that is even arguably disputed, by the special concurrence or the government, is the identity of the declarant, which certainly does not entail any constitutional inquiry. While we had to clarify the meaning of circuit precedent addressing the admissibility of out-of-court language interpreter statements, and hence could not conclude that the error in this case was plain, none of the analysis about the identity of the interpreter involved any constitutional interpretation. Moreover, as we have more than adequately addressed in this opinion, the Supreme Court's jurisprudence in Crawford, Melendez-Diaz, and Bullcoming unequivocally resolve the constitutional question of what the Confrontation Clause requires when the government seeks to introduce out-of-court testimonial statements through third-party testimony. These cases have rejected (not once, but three times) the hearsay rules' standard of reliability for determining the admissibility under the Confrontation Clause of out-of-court testimonial statements, and instead have mandated cross-examination. That the Supreme Court may still be fleshing out what types of statements are considered "testimonial" is of no moment in this case and certainly does not put its decisions in Crawford, Melendez-Diaz, and Bullcoming in "some flux."

Here, it is prudential and judicially efficient to resolve this question now, providing clarification and guidance to the district courts, government, and defendants who litigate under the circumstances presented in this case. Contrary to the special concurrence's position, there is no fact-finding that a district court would need to make that would aid us in identifying the declarant in this case. Certainly if we had to determine whether the admission of the

25

Because we cannot say that the error in admitting the CBP officer's

statements was plain, we are unable to provide relief and thus AFFIRM Charles's

conviction.

**AFFIRMED.**

---

interpreter's statements was permissible under the <u>rules of evidence</u>, we would need findings on her motive to mislead and competency, but that is not the issue in this case. Likewise, the parties had the opportunity to fully brief all of the elements of the plain error standard, including the critical element of whether the admission of the interpreter's statements violated Charles's rights under the Confrontation Clause. That the government chose to focus only on the "plain" prong of the three-part plain error standard should not preclude us from resolving the appeal before us.

MARCUS, Circuit Judge, specially concurring:

I concur in the judgment reached by the panel majority. There was no plain error in this case, so we must affirm Charles's conviction. However, I write separately because I believe it unnecessary to decide a novel and difficult question of constitutional law in an area where the Supreme Court's jurisprudence is still evolving. The majority makes a serious and substantial argument for its position, and it may well be right. But I would wait until the necessity of deciding the question sharpens both the adversarial presentation of the issue and our decision-making process.

This case presents a question that ordinarily does not trouble courts addressing Confrontation Clause challenges, since the answer is usually obvious: who is the declarant of an out-of-court statement? In this case, however, the answer is not obvious. Charles made a statement in Creole to a government-provided interpreter, who then interpreted the statement from Creole to English. The interpreter then made the English-language statement to the officer who testified at Charles's trial. In order for Charles to succeed on her Confrontation Clause claim, she must establish both that the declarant of the English-language statement was the interpreter, not herself, see United States v. Brown, 441 F.3d 1330, 1358-59 (11th Cir. 2006) (admission of defendant's own statements does not violate the Confrontation Clause, since a defendant does not have the right to confront

27

himself), and that the statement was testimonial, see Michigan v. Bryant, 131 S. Ct. 1143, 1153 (2011); Crawford v. Washington, 541 U.S. 36, 51-52 (2004).[1]

Moreover, because Charles failed to object to the admission of the officer's testimony at trial, we review her claim on appeal only for plain error. Maj. Op. at 5.

As the panel majority soundly concludes, there was no plain error because, under our precedents, "there can be no plain error when there is no precedent from the Supreme Court or this Court directly resolving" the issue. Maj. Op. at 24-25 (quoting United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005)). No Supreme Court or Eleventh Circuit precedent addresses the question of who the declarant of an interpreted statement is, at least for purposes of post-Crawford Confrontation Clause analysis.[2] In the Supreme Court's recent run of

---

[1] The majority opinion suggests that determining the identity of the declarant is not a "constitutional inquiry," Maj. Op. at 25 n.15, but this parses the Confrontation Clause analysis too finely. The Confrontation Clause itself provides the defendant with the right "to be confronted with the witnesses against him," U.S. Const. amend. VI (emphasis added), which requires us, as a constitutional matter, to discern who the witness is. And indeed, as Brown has established, if the declarant is the defendant, then there is no confrontation problem.

[2] For many years now, courts have treated the foreign-language speaker as the declarant and the interpreter merely as a "language conduit" for the speaker as long as certain factual conditions are met, although those decisions either predate Crawford or did not directly address a Confrontation Clause challenge. See United States v. Alvarez, 755 F.2d 830, 860 (11th Cir. 1985) ("Where . . . there is no motive to mislead and no reason to believe the translation is inaccurate" -- in other words, where the interpreter is reliable -- there is "a testimonial identity between declarant and translator" (quoting United States v. Da Silva, 725 F.2d 828, 832 (2d Cir. 1983))); see also United States v. Vidacak, 553 F.3d 344, 352-53 (4th Cir. 2009); United States v. Sanchez-Godinez, 444 F.3d 957, 960-61 (8th Cir. 2006); United States v. Cordero, 18 F.3d 1248, 1252-53 (5th Cir. 1994); United States v. Nazemian, 948 F.2d 522, 525-28 (9th Cir. 1991)

Confrontation cases, the identity of the declarant has never been at issue. Rather, those cases have sought to define which statements count as "testimonial," see Bryant, 131 S. Ct. at 1166-67 (statements that enabled police to respond to an ongoing emergency were not testimonial); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310 (2009) (affidavits certifying that tested substances were cocaine were testimonial); Davis v. Washington, 547 U.S. 813, 827-28 (2006), and have clarified that, where a statement is testimonial, no substitute for the original declarant is acceptable, see Bullcoming v. New Mexico, 131 S. Ct. 2705, 2715 (2011) (analyst who prepared blood-alcohol analysis had to be made available for cross-examination and could not be replaced with another analyst); Melendez-Diaz, 557 U.S. at 317-19 & n.6 (affidavits could not substitute for the analyst simply because the affidavits reported the results of scientific testing, even if the analyst "possessed the scientific acumen of Mme. Curie and the veracity of Mother Theresa"). Neither has this Court addressed, in a published opinion, the issue of whether an interpreter or the foreign-language speaker is the declarant of an interpreted statement for Confrontation Clause purposes. In the absence of any

(considering and rejecting a Confrontation Clause challenge to the admissibility of an interpreter's out-of-court statements); United States v. Beltran, 761 F.2d 1, 9-10 (1st Cir. 1985); Da Silva, 725 F.2d at 832. Even after Crawford, the Ninth Circuit reaffirmed that Nazemian's Confrontation Clause holding remained the law of that Circuit. Although the Ninth Circuit recognized that Crawford and its progeny were in some tension with Nazemian's rationale, it concluded that those cases never addressed the issue of the identity of the declarant and therefore had not abrogated Nazemian. See United States v. Orm Hieng, 679 F.3d 1131, 1139-41 (9th Cir. 2012).

precedent from either the Supreme Court or this Court, any error that may have occurred in this case could not be plain.

Generally, when it is clear that we can dispose of a plain-error argument based on the absence of precedent, we do not undertake the task of determining whether there was error, which may be the more difficult question. Instead, we may assume arguendo that there was error, or skip that question, and move on to the outcome-determinative prong of the plain-error test. E.g., United States v. Castro, 455 F.3d 1249, 1253 (11th Cir. 2006) (per curiam) ("[W]e need not reach [the Equal Protection] question because any error would not be plain."); see United States v. Dortch, 696 F.3d 1104, 1112 (11th Cir. 2012) ("We need not address whether a constructive amendment amounts to a per se reversible error . . . because, even if we assume that the district court erred, the error was not plain."); United States v. Pantle, 637 F.3d 1172, 1177 (11th Cir. 2011) (per curiam) (assuming plain error but finding that the error did not affect the defendant's substantial rights); United States v. Swatzie, 228 F.3d 1278, 1282 (11th Cir. 2000) (same); see also United States v. Hadley, 431 F.3d 484, 516 (6th Cir. 2005) (Sutton, J., concurring) (where the third prong of the plain-error test decided the case, "we need not address the difficult Crawford issues that this case otherwise presents").

30

This reluctance stems, at least in part, from the long-standing prudential policy "that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105 (1944); see United States v. Resendiz-Ponce, 549 U.S. 102, 104 (2007); Jean v. Nelson, 472 U.S. 846, 854 (1985); Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g, P.C., 467 U.S. 138, 157 (1984); Ashwander v. TVA, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring) ("The Court will not anticipate a question of constitutional law in advance of the necessity of deciding it. It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (internal quotation marks and citations omitted)). Declining to address an unnecessary constitutional question preserves "the unique place and character, in our scheme, of judicial review of governmental action for constitutionality," and pays heed to "considerations of timeliness and maturity, of concreteness, definiteness, certainty, and of adversity of interests affected." Rescue Army v. Mun. Court, 331 U.S. 549, 571, 573-74 (1947). It also avoids "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Pearson v. Callahan, 555 U.S. 223, 236-37 (2009).

As I see it, applying this rule would be wise here, for several reasons. To start with, we did not have the benefit of any factfinding from the district court that

31

may be pertinent to resolving this issue, since Charles did not object to this testimony. According to at least one court of appeals, the identity of the declarant is a factbound determination that weighs multiple factors, including who provided the interpreter and the interpreter's qualifications. See United States v. Nazemian, 948 F.2d 522, 527-28 (9th Cir. 1991). In addition, because of the posture of this case, the government primarily argued that the lack of binding precedent meant that the error was not plain, depriving us of full merits briefing on the underlying constitutional question.

Moreover, this area of law appears to be in some flux. Although the majority relies on the proposition that Crawford wholly severed the link between Confrontation Clause analysis and the rules of evidence or reliability, see Maj. Op. at 23 ("The Supreme Court could not have been clearer that reliability, absent cross-examination, is irrelevant for purposes of the Confrontation Clause."), the Supreme Court's subsequent cases have suggested that those considerations may remain relevant, at least in the context of determining whether statements are testimonial. Compare Bryant, 131 S. Ct. at 1155 (to determine whether a statement is testimonial based on its primary purpose, "standard rules of hearsay, designed to identify some statements as reliable, will be relevant"), with id. at 1174 (Scalia, J., dissenting) (disapproving of Bryant as "a gross distortion of the law -- a revisionist narrative in which reliability continues to guide our Confrontation Clause

32

jurisprudence"), id. (warning that the Court was returning to Ohio v. Roberts's "unworkable standard unmoored from the text and the historical roots of the Confrontation Clause"), and Bullcoming, 131 S. Ct. at 2725 (Kennedy, J., dissenting) ("[T]he Court insists . . . reliability does not animate the Confrontation Clause. Yet just this Term the Court ruled [in Bryant] that, in another confrontation context, reliability was an essential part of the constitutional inquiry." (citations omitted)). As one treatise has noted, the majority opinion in Michigan v. Bryant has apparently incorporated "a Ohio v. Roberts-like assessment of a statement's 'reliability' into its Confrontation Clause analysis." 4 Clifford S. Fishman & Anne T. McKenna, Jones on Evidence § 25A:17.50 (7th ed. 2012).

In light of these concerns and the likelihood that an analogous case without the limitations of plain-error review will almost surely reach this Court, I would not decide this Confrontation issue today.