[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10301

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VADYM VOZNIUK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20859-RS-1

_____

Before BRANCH, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Vadym Vozniuk appeals his convictions for use of unauthorized access devices under 18 U.S.C. § 1029(a)(2) and conspiracy to commit access device fraud under 18 U.S.C. § 1029(b)(2). He contends that the district court plainly erred in admitting a summary spreadsheet—prepared by the victim of the fraud, Target Corporation, and introduced by the government—that details a series of fraudulent transactions made at Target stores across Florida and purportedly establishes Vozniuk's participation in the scheme. He also contends that the evidence presented at trial was insufficient to support his convictions.

After careful review and with the benefit of oral argument, we conclude that Vozniuk has failed to show that any alleged errors affected his substantial rights because the other evidence presented at trial—unchallenged by Vozniuk—was sufficient to support his convictions. Accordingly, we affirm.

## I.    Background

A grand jury charged Vozniuk and his codefendants Denis and Igor Grushko with conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2) ("Count One") and charged Vozniuk with use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2) ("Count Two").

At a joint trial, the government presented evidence that, between July 2017 and March 2018, Vozniuk and his codefendants

engaged in over 250 fraudulent transactions at Target stores throughout Florida, with the total loss to Target approximating $110,000. The evidence at trial showed that, in November 2017, Target's fraud prevention team discovered a significant number of "chargebacks" coming from online orders designated for pickup at its Florida stores. A "chargeback" occurs when a bank or credit card company identifies a purchase as fraudulent and charges the amount of the fraudulent purchase back to the seller.

The government's primary witness, Alexandros Glitsos, the lead investigator on Target's fraud prevention team, testified at trial that the fraudsters would use stolen credit card information to purchase low-cost items unlikely to raise any suspicion of fraudulent activity (*e.g.*, cleaning products and food items), designate a Target location for in-store pickup, and authorize a non-existent third party to retrieve the goods. A member of the group would then pick up the merchandise using a fake ID and subsequently return the items to a different location in exchange for a "merchandise return card," which is essentially a Target gift card. In turn, the group used these cards to purchase more expensive items, which, as Glitsos explained, "have a higher tendency to be attempted with fraud purchases." Based on store surveillance footage, Target's investigators identified three individuals who regularly picked up and returned the suspicious orders. Target's investigators then compiled the results of their investigation into a summary spreadsheet, which, according to

Glitsos, "la[id] out every order, return, and then purchase using a gift card" that Target's investigators tracked.

Specifically, the summary spreadsheet tracked every fraudulent transaction identified by Target's fraud team—listing the fake name used, the store location, and, in some cases, still images from surveillance footage of the pickups and returns. Target investigators also compiled the underlying evidence into electronic folders based on the fake names used by the suspects. For example, one folder titled "Mark Solomons" detailed 37 orders where "Mark Solomons" was used as an alternate pickup name. And the underlying surveillance footage in that folder featured numerous videos of a man resembling Vozniuk making in-store pickups and returns.

During Glitsos's testimony, the government moved to admit into evidence a disk containing both the underlying documentary and video evidence and the summary spreadsheet. Glitsos testified that the video footage was recorded live, that the recordings and other records were kept in the regular course of Target's business, and that the summary spreadsheet was a compilation of those business records. One of Vozniuk's codefendants objected to the spreadsheet for "lack of foundation." The government responded that the underlying evidence was admissible as business records under Federal Rule of Evidence 803 and that the spreadsheet was a summary chart of voluminous business records admissible under Federal Rule of Evidence 1006.

The court overruled the objection, and the summary spreadsheet and underlying business records were admitted into evidence.

The prosecutor then published the summary spreadsheet so that the jury could see it, and Glitsos walked the jury through the spreadsheet and some of the underlying evidence. Although the summary spreadsheet referred to the codefendants only as Subjects 1, 2, and 3, Glitsos identified the suspects by their real names in his testimony, immediately after which Vozniuk's counsel objected on hearsay grounds. The court sustained the objection.

The government also called Logan Workman, a special agent with the United States Secret Service, as a witness. Workman testified that law enforcement arrested three suspects based on information given to them by Target. After the arrests, agents searched Vozniuk's codefendants Denis and Igor Grushko's house (the "Grushko residence") where they recovered holograms for making fake government ID cards, blank plastic white cards, and multiple fake IDs. According to Workman, several fake IDs featured Vozniuk's picture and bore the name "Mark Solomons" or "Neha Kapila." The government entered the fake IDs into evidence.

In addition to the ID cards, agents also recovered a laptop and external hard drive from the Grushko residence, which contained instruction manuals on how to commit credit card fraud and a document listing various credit card numbers. The computer also contained spreadsheets created by the defendants listing fraudulent transactions, including the fake name used for the third-

party pickup. These names matched the ones seen on the fake IDs recovered at the Grushko residence, including the name "Mark."

At the close of the government's evidence, Vozniuk moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the court denied, and all three defendants rested without presenting evidence.

The next morning, the jury found Vozniuk guilty on both counts, and the court sentenced him to 27 months' imprisonment and three years of supervised release.

After sentencing, Vozniuk's codefendants filed a motion for new trial and a renewed motion for judgment of acquittal challenging the sufficiency of the evidence against them, both of which Vozniuk joined. The court denied these motions. Vozniuk timely appealed.

## II.    Discussion

As an initial matter, we note that originally the main issue on appeal was that the government's first and primary witness at trial, Alexandros Glitsos, Target's fraud investigator, never swore an oath before testifying. And it remained the main issue at oral argument. But five months after the record on appeal was certified and transmitted to our Court, the district court corrected the trial transcript to reflect that Glitsos was, in fact, sworn as a witness. The corrected transcript was docketed by the district court nearly 11 months before oral argument. And despite both parties representing to this Court (in their briefs) that Glitsos was

unsworn, neither party told this Court about the correction.  It was not until Vozniuk's rebuttal at oral argument—after the government spent much of its time at argument discussing the oath issue—that Vozniuk's counsel informed the Court of the corrected transcript.  Better late than never, but unacceptable, nonetheless.  We remind counsel that it is their duty to inform the Court when they first become aware that factual representations previously made in their briefs are now false and when the record on appeal is inaccurate.  *See* Fla. Rules of Pro. Conduct R. 4-3.3(a)(1) ("A lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.").

Turning to the issues remaining on appeal, Vozniuk challenges the admissibility of Target's summary spreadsheet on three grounds: (1) that it was not properly admitted as a summary of admissible business records under Federal Rules of Evidence 803(6) and 1006 because it was an inherently untrustworthy investigative report and therefore hearsay;[1] (2) that it contained

---

[1] Federal Rule of Evidence 1006 permits a party to use a summary or chart "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  And a record of an event that otherwise would be inadmissible hearsay is admissible as a "business record" if: (1) it was made at or near the time of the event by someone with knowledge of it; (2) it was kept in the course of a regularly conducted business activity; (3) making the record was a regular practice of that activity; and (4) those conditions are shown by the testimony of the custodian of the records or another qualified witness.  Fed. R. Evid. 803(6).  However, business records made in anticipation of litigation are not

8                    Opinion of the Court                    20-10301

testimonial statements and was therefore inadmissible under the Sixth Amendment's Confrontation Clause;[2] and (3) that its admission violated the Best Evidence Rule, see Fed. R. Evid. 1002.[3] He also contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt.  We disagree and affirm.

(a) *Evidentiary Issues*

Because Vozniuk failed to raise any of his evidentiary objections at trial, we review them only for plain error.[4]  *United*

---

admissible under Rule 803(6).  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321–22 (2009).

[2] The Confrontation Clause prohibits the introduction of out-of-court testimonial statements unless the declarant is unavailable to testify, and the defendant had a prior opportunity to cross-examine the declarant.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  A statement is testimonial if it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  *Id.* at 52 (quotation marks omitted).

[3] Federal Rule of Evidence 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its contents unless these rules or a federal statute provides otherwise."

[4] At trial, Vozniuk's codefendant did object to Target's summary spreadsheet, but simply for "lack of foundation."  And none of the codefendants raised any of the specific evidentiary issues Vozniuk challenges on appeal.  Accordingly, Vozniuk failed to preserve these issues for ordinary appellate review.  *See United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (noting that a party "must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought" (quotation omitted)); *see also* Fed. R. Crim. P. 51(b) (instructing parties to preserve claims of error "by informing the court—when

20-10301                Opinion of the Court                9

*States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019). We also review an alleged violation of the Confrontation Clause only for plain error if the defendant failed to raise the issue at trial. *United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013).

On plain error review, we will not correct an unpreserved error unless the district court's error (1) was plain, (2) affected the defendant's substantial rights, and (3) seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020). "An error is plain if . . . the explicit language of a statute or rule or precedent from the Supreme Court or this Court directly resolv[es] the issue." *Id.* (quotation omitted) (alteration in original). An error affects a defendant's substantial rights "if there is a reasonable probability of a different result absent the error," *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015), which means "a probability sufficient to undermine confidence in the outcome," *United States v. Rodriguez*, 398 F.3d 1291 (11th Cir. 2005) (quotation omitted). And it is the defendant's burden to establish such a probability. *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018). Because Vozniuk has failed to establish that the admission of the summary spreadsheet affected his substantial rights, we affirm his convictions.

---

the court ruling or order is made or sought—of the action the party wishes to take, or the party's objection to the court's action *and the grounds for that objection*" (emphasis added)).

We need not decide here whether the district court committed a "plain" error in admitting the Target spreadsheet (on hearsay, Confrontation Clause, or "best evidence" grounds) because Vozniuk has not established "a reasonable probability of a different result" absent the alleged error, and his claim therefore fails the "substantial rights" prong of the plain error inquiry. *See Hesser*, 800 F.3d at 1325, 1327. That is because the remaining evidence at trial—not challenged by Vozniuk—established his participation in the conspiracy and supported, rather than undermined, the jury's verdict. This incriminating evidence included, among other things: dozens of videos and photographs taken from store surveillance footage showing a man resembling Vozniuk picking up and returning items at various Target stores; Target receipts tracking those exchanges; fake identification cards bearing Vozniuk's image and listing names such as "Mark Solomons" and "Neha Kapila"; and the Grushkos' spreadsheet, which documented specific instances of fraud committed by "Mark." Accordingly, Vozniuk has failed to show that the admission of the spreadsheet affected his substantial rights, and his claim fails.

(b) *Sufficiency of the Evidence*

Vozniuk also contends that the evidence was insufficient to support the jury's verdict. We review *de novo* a challenge to the sufficiency of the evidence supporting a conviction, viewing the evidence in the light most favorable to the jury's verdict to determine "whether a reasonable jury could have found the

defendant guilty beyond a reasonable doubt." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) (quotation omitted).

To obtain a conviction under 18 U.S.C. § 1029(a)(2), the government must prove that the defendant: "(1) 'knowingly' used 'one or more unauthorized access devices,' (2) 'with intent to defraud,' (3) to obtain anything having an aggregate value of '$1,000 or more' during a one-year period, and (4) such use 'affect[ed] interstate or foreign commerce.'" *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) (footnote omitted) (quoting 18 U.S.C. § 1029(a)(2)). Section 1029(e)(3) defines "unauthorized access device" as any access device that is "lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." *Id.* § 1029(e)(3). Section 1029(e)(1) defines "access device" as any "card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or . . . other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." *Id.* § 1029(e)(1).

To prove a conspiracy under 18 U.S.C. § 1029(b)(2), the government must prove the existence of a conspiracy to commit an offense under § 1029(a) and the defendant's knowing and voluntary participation in the conspiracy. *See United States v. Delva*, 922 F.3d 1228, 1246 (11th Cir. 2019). To establish knowing and voluntary participation, the government must show that the defendant "knew the essential nature of the conspiracy." *United States v. Garcia*, 405 F.3d 1260, 1269–70 (11th Cir. 2005).

Participation in a conspiracy may be established by "direct or circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *Id.* at 1270.

The district court did not err in finding that the evidence was sufficient to sustain Vozniuk's convictions under 18 U.S.C. § 1029(a)(2) and (b)(2) because the evidence presented at trial authorized a rational jury to find him guilty beyond a reasonable doubt for the same reasons set forth above in response to his challenges to the admission of evidence. First, the jury could have reasonably inferred that Vozniuk was involved in the Grushkos' scheme to defraud Target based on the fake identifications bearing his photo that federal investigators found at the Grushkos' residence. Second, the false names on those fake identifications also appeared in a spreadsheet found on the Grushkos' laptop, which tracked the group's fraudulent activities and enabled the jury to infer that Vozniuk made illegal purchases and returns under assumed names. Third, the videos and photographs from Target's store surveillance footage, which showed a man resembling Vozniuk making purchases and returns at various Target stores under the same names recorded in the Grushkos' spreadsheet, added another link between Vozniuk and specific fraudulent transactions. Taken together, this unrebutted evidence was sufficient to support the jury's verdict that Vozniuk fraudulently used an unauthorized access device and conspired to commit access-device fraud. Accordingly, we affirm Vozniuk's convictions.

20-10301          Opinion of the Court                    13

**AFFIRMED.**